UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TERESA ARMSTRONG,<br><br>Plaintiff,<br><br>v.<br><br>MICHAELS STORES, INC.,<br><br>Defendant. | Case No. 17-CV-06540-LHK<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE**<br><br>Re: Dkt. No. 33 |

Plaintiff Teresa Armstrong ("Plaintiff") filed this putative class action against Michael Stores, Inc. ("Michaels" or "Defendant") in the Superior Court of California on October 10, 2017. ECF No. 1. Defendant removed the action based on the Class Action Fairness Act ("CAFA") on November 10, 2017. *Id.* On December 15, 2017, Plaintiff filed her First Amended Complaint, which asserted eight causes of action arising from her employment with Michaels at a retail store in California, including a claim for civil penalties under the Private Attorneys General Act ("PAGA"). ECF No. 11 ("FAC"). Before the Court is Defendant's motion to compel arbitration of Plaintiff's non-PAGA claims, dismiss class allegations, and stay civil proceedings. ECF No. 33 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to compel arbitration, and stays the lawsuit.

# I. BACKGROUND

## A. Factual Background

Defendant Michaels is a Delaware Corporation that does business in California. FAC ¶¶ 1, 5. Plaintiff is an individual and resident of California who worked at Michaels from June 2012 to June 23, 2017. *Id.* ¶¶ 4, 18. In October 2017, Plaintiff brought suit in state court against Michaels for claims arising from her employment with Michaels at a retail store in California. ECF No. 1.

### 1. Michaels University

Defendant Michaels utilizes an online interface called "Michaels University" ("MU") to present company policies and agreements to its employees. *See* ECF No. 33-3 ("Keller Decl.") ¶¶ 2, 4. Employees may log on to this online interface by using their employee ID number or a unique username and a password. *Id.* ¶ 4. When a new training becomes available on MU, employees receive an alert on the store portal, which is a communication tool used by all Michaels employees, and the alert provides a link to MU. *Id.* ¶ 5. On the MU home page, employees can access training modules, and review their MU transcript, which reflects the completion status of each module. *Id.*

### 2. Plaintiff Assents to Arbitration in 2016

In 2016, Michaels asked its employees to complete a mandatory 2016 employee handbook online curriculum on MU, which included a "Mutual Agreement to Resolve Issues and Arbitrate Claims" policy. *Id.* ¶ 3. On May 31, 2016, Plaintiff clicked on a link and logged in to complete the 2016 employee handbook training on MU. *Id.* ¶ 6; *see also id.*, Ex. C. Plaintiff then clicked the "My Training" box at the top of the page. *Id.*; *see also id.*, Ex. A. From there, she clicked on the "2016 US Store Team Member (California) Handbook" link to select the online training for the employee handbook. *Id.* ¶ 6. This online training consisted of two parts. First, Plaintiff was required to open a PDF of the employee handbook, which includes the Arbitration Agreement, and Plaintiff clicked a button to indicate that she had completed her review of the handbook. *Id.* ¶ 7. Plaintiff could not proceed to the second part unless she opened the employee handbook and clicked the button. *Id.* Second, Plaintiff completed a tutorial that consisted of ten slides. *Id.*; *see*

*also id.*, Ex. B. The only way Plaintiff could move through these slides was by clicking the "Continue" or "I Agree" button at the bottom of each slide. *Id.* ¶ 8. The last two slides related to the "Mutual Agreement to Resolve Issues and Arbitrate Claims." *Id.*, Ex. B. On the last slide, Plaintiff clicked "I Agree" to the following language:

> BY CLICKING "I AGREE" BELOW, I AGREE THAT I HAVE CAREFULLY READ, UNDERSTAND AND AGREE TO THE MUTUAL AGREEMENT TO RESOLVE ISSUES AND ARBITRATE CLAIMS AND AGREE THAT THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREE TO ARBITRATE CLAIMS AND DISPUTES COVERED BY THE MUTUAL AGREEMENT TO RESOLVE ISSUES AND ARBITRATE CLAIMS.

*Id.*; *see also id.* ¶ 8.

### 3. Plaintiff Assents to Arbitration in 2017

After Plaintiff completed the 2016 employee handbook training, Michaels revised the Arbitration Agreement and posted a second training module on MU. *Id.* ¶ 11. On January 31, 2018, Plaintiff logged into MU using her username and password and clicked the new "Mutual Agreement to Resolve Issues and Arbitrate Claims" training under "My Training." *Id.* ¶ 12; *see also id.*, Exs. C and D. The "Mutual Agreement to Resolve Issues and Arbitrate Claims" module consisted of 19 slides, the first 17 of which contained the text of the Arbitration Agreement. *Id.* ¶ 12; *see also id.*, Ex. D. The only way Plaintiff could move through these slides was by clicking the "Next" button at the bottom of each slide. *Id.* ¶ 12.

The fourth slide consisted of language regarding "what disputes go to arbitration." *Id.*, Ex. D. In particular, the slide provided for the following delegation clause:

> Unless otherwise stated in this Agreement, the Arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve disputes relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable and pertaining to any waiver.

*Id.* The seventh and eighth slides consisted of language regarding a class and/or collective action waiver. *Id.* ¶ 13; *see also id.*, Ex. D. Specifically, the seventh slide provided that "[y]ou and the Company agree to bring any dispute in arbitration individually only, and not as a class and/or,

collective action." *Id.*, Ex. D. The eighth slide explained how employees may opt-out of the class and collection action waivers, including emailing "WorkplaceResolutions@michaels.com" and writing that the employee was opting out or requesting a "Class Action Waiver Opt-Out Form." *Id.*, Ex. D. Plaintiff never sent an email to "WorkplaceResolutions@michaels.com" to opt-out of the class and collection action waivers. *Id.* ¶ 13. The fifteenth slide, titled "Sole and Entire Agreement," provided that unless this Agreement "is deemed void, unenforceable or invalid, this Agreement replaces any prior or concurrent oral or written statements of arbitration." *Id.*, Ex. D.

Plaintiff acknowledged the Arbitration Agreement when she clicked the "I Agree" buttons on the final two slides, entitled "Acknowledgement." *Id.* ¶ 14. Plaintiff clicked the "I Agree" button to "demonstrate [her] acceptance of the Mutual Agreement to Resolve Issues and Arbitrate Claims" and that she "underst[ood] and agree[d] that an electronic signature and/or electronic acceptance is as legally binding as an ink signature" on the second to last slide. *Id.* ¶ 14; *see also id.*, Ex. D. On the last slide, Plaintiff clicked "I Agree" to the following language:

> BY CLICKING "I AGREE" BELOW, I AGREE THAT I HAVE CAREFULLY READ, UNDERSTAND AND AGREE TO THE MUTUAL AGREEMENT TO RESOLVE ISSUES AND ARBITRATE CLAIMS AND AGREE THAT THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A COURT OR JURY TRIAL AND AGREE TO ARBITRATE CLAIMS AND ISPUTES COVERED BY THE MUTUAL AGREEMENT TO RESOLVE ISSUES AND ARBITRATE CLAIMS.

*Id.* ¶ 14; *see also id.*, Ex. D.

**B. Procedural History**

On October 10, 2017, Plaintiff filed her putative class action against Defendant in the Superior Court of California which alleged seven causes of action arising from Plaintiff's employment with Michaels at a retail store in California: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Hourly Wages; (4) Failure to Pay Vacation Wages; (5) Failure to Provide Accurate Written Wage Statements; (6) Failure to Timely Pay All Final Wages; and (7) Unfair Competition. ECF No. 1. Defendant answered Plaintiff's complaint and removed the action to federal court on November 10, 2017, pursuant to CAFA, 28 U.S.C. §

4

1332(d) and 28 U.S.C. §§ 1441, 1446, and 1453. *Id.* In its answer, Defendant asserted as its fifteenth defense that "[t]he Complaint, and each purported action therein, is barred to the extent Plaintiff, and any purported class members she seeks to represent, agreed to submit their claims against Defendant to binding arbitration." ECF No. 1-3 at 3. On December 15, 2017, Plaintiff filed her FAC, and added an eighth cause of action for civil penalties under PAGA, Labor Code §§ 2698. *See* FAC.

On February 7, 2018, the parties filed a joint case management statement. ECF No. 18 ("February 7, 2018 JCMS"). In the February 7, 2018 JCMS, Defendant represented that it "anticipates filing a motion to compel arbitration and a motion for summary judgment after conducting discovery." *Id.* at 2. The parties also represented that one of the primary legal issues included: "[w]hether Plaintiff agreed to arbitrate her claims against Defendant." *Id.* at 3. At the February 14, 2018 case management conference, Defendant's counsel reaffirmed its position that it anticipated filing a motion to compel arbitration. ECF No. 33-1 ("Knopp Decl.") ¶ 6.

On February 14, 2018, Defendant filed its answer to the FAC. ECF No. 19. Defendant again asserted as its fifteenth defense that "[t]he Complaint, and each purported action therein, is barred to the extent Plaintiff, and any purported class members she seeks to represent, agreed to submit their claims against Defendant to binding arbitration." *Id.* at 22.

The parties conducted some discovery. On February 15, 2018, Defendant served Interrogatories. ECF No. 40-1 ("Segal Decl"), Ex. 9. On February 28, 2018, Defendant served Requests for Production. *Id.,* Ex. 10. On March 27, 2018, Defendant noticed the deposition of Plaintiff, but ultimately took the deposition off calendar due to a scheduling conflict. *Id.*, Exs. 14–15. Plaintiff served written responses to the Interrogatories on March 28, 2018. *Id.,* Ex. 11. Plaintiff served written responses to the Requests for Production and produced documents on April 5, 2018. *Id.*, Exs. 12–13. On April 19, 2018, Plaintiff served written discovery, including Requests for Production, Interrogatories, and Requests for Admission. *Id.*, Exs. 1–4.

On May 21, 2018, the United States Supreme Court decided *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018). In *Epic Sys. Corp.*, the United States Supreme Court decided the questions of

whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, no matter what they agreed with their employers?" *Id.* at 1619. The United States Supreme Court held that arbitration agreements requiring individual arbitration, instead of allowing class or collective actions, were enforceable under the Federal Arbitration Act ("FAA"). *Id.* at 1632. In so holding, the Supreme Court overruled the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), which had held that a concerted—or collective—action waiver violated the National Labor Relations Act ("NLRA") and was unenforceable under the FAA. *See id.*

On June 5, 2018, Defendant's counsel sent a letter to Plaintiff's counsel via e-mail and regular mail that requested that Plaintiff dismiss all of her non-PAGA claims in favor of arbitration. Knopp Decl. ¶ 7. The letter stated "[Plaintiff] entered into an arbitration agreement during her employment with Michaels." Knopp Decl., Ex. A. "According to that agreement, [Plaintiff] must arbitrate 'past, present or future claims or disputes related to or arising out of [her] employment, [her] application for employment and/or [her] termination of employment with the Company,' including 'wage or compensation claims.'" *Id.* Defendant's counsel's letter further stated that Plaintiff "agreed 'to bring any dispute in arbitration individually only, and not as a class . . . action.'" *Id.* The letter continued: "[i]n light of *Epic Systems Corp. v. Lewis*, in which the Supreme Court overruled Ninth Circuit precedent and held that arbitration agreements containing class action waivers are enforceable, . . . we request that [Plaintiff] voluntarily dismiss all claims except her cause of action for penalties under the Private Attorneys General Act." *Id.* The letter concluded: "If [Plaintiff] refuses to do so, Michaels intend to file a motion to compel arbitration. Please let us know by June 11, 2018 whether [Plaintiff] will voluntarily dismiss her arbitrable claims." *Id.* Defendant's counsel also asserted in his declaration in support of the motion to compel arbitration that Defendant's counsel "and other attorneys in [his] office have conferred with [Plaintiff's] counsel multiple occasions regarding the Arbitration Agreement and have requested that Armstrong submit her non-PAGA claims to binding arbitration on an individual

6

basis, if at all, in accordance with her arbitration agreement. [Plaintiff's] counsel has refused." Knopp Decl. ¶ 8.

On July 3, 2018, the parties filed a joint case management statement. ECF No. 31 ("July 3, 2018 JCMS"). In the July 3, 2018 JCMS, Defendant represented that it "anticipates filing a motion to dismiss, or in the alternative, compel arbitration of all claims except Plaintiff's cause of action for penalties under the Private Attorneys General Act." *Id.* at 1–2. Defendant also wrote that "Defendant pled the defense in its answer and reiterated it in the initial case management report, making clear that Defendant would enforce the agreement if the Supreme Court overruled Ninth Circuit precedent regarding the enforceability of arbitration agreements containing class action waivers." *Id.* at 2.

Defendant filed its motion to compel arbitration of Plaintiff's non-PAGA claims, dismiss class allegations, and stay civil proceedings on August 20, 2018. *See* Mot. Plaintiff opposed on September 4, 2018. ECF No. 40 ("Opp'n"). Defendant replied on September 11, 2018. ECF No. 42 ("Reply").

## II.    LEGAL STANDARD

The FAA applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

Interpretation of arbitration agreements generally turns on state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). However, the United States Supreme Court has stated that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute," and that "[t]he court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The FAA creates a body of federal substantive law of arbitrability that requires a

7

healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989) ("[T]he FAA must be resolved with a healthy regard for the federal policy favoring arbitration."). However, "state law is not entirely displaced from federal arbitration analysis." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001).

In deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts generally should apply ordinary state-law principles governing contract formation in deciding whether [an arbitration] agreement exists."). Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626. If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Epic Sys. Corp.*, 138 S. Ct. at 1622 (quoting 9 U.S.C. § 2). "The clause 'permits agreements to

arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted).

In addition, the parties can agree to delegate arbitrability—or "gateway" issues concerning the scope and enforceability of the arbitration agreement, and whether the dispute should go to arbitration at all—to the arbitrator. The United States Supreme Court has held that the question of "who has the power to decide arbitrability," the court or the arbitrator, "turns on what the parties agreed about that matter." *First Options*, 514 U.S. at 943. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. "[Q]uestions of arbitrability may go to the arbitrator . . . when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so." *Id.* at 80. In cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the Court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

## III.   DISCUSSION

Before the Court is Defendant's motion to compel arbitration, dismiss class allegations, and stay this lawsuit. *See* Mot. For the reasons explained below, the Court GRANTS the motion to compel and stays the case.

### A.   Motion to Compel

Defendant contends that the Arbitration Agreement requires Plaintiff to arbitrate—on an individual basis—any claims relating to her employment, except for her claim for civil penalties under PAGA.[1] Mot. at 1. Plaintiff does not challenge whether the parties agreed to arbitrate,

---

[1] Defendant explains that it is not seeking to compel arbitration of Plaintiff's PAGA claim because an employee may not waive her right to bring a representative PAGA claim. *See* Mot. at 1 (citing *Sakkab v. Luxottica Retail North Am., Inc.,* 803 F.3d 425, 431 (9th Cir. 2015) (holding that plaintiff's "waiver of his right to bring a representative PAGA action is unenforceable")).

whether the scope of the Arbitration Agreement encompasses all of her claims except her PAGA claim in this lawsuit, or whether these are questions for the arbitrator. *See* Opp'n. Instead, Plaintiff argues that Defendant (1) forfeited the right to compel arbitration by not seeking arbitration within the applicable time limit, which included an obligation to seek arbitration "within the statute of limitations" and "as soon as possible," *see* Opp'n at 8–9 (citing Keller Decl., Ex. D at 22); and that Defendant (2) waived the right to compel arbitration by litigating the case, *see* Opp'n at 3–8. As an initial matter, the parties disagree on whether these questions of forfeiture and waiver are for the Court or for the arbitrator to decide. *See* Opp'n; *see also* Reply.

For the reasons given below, the Court determines first that the question of forfeiture is for the arbitrator, but that the question of waiver is for the Court to decide. The Court determines second that Defendant did not waive its right to compel arbitration.

### 1. Whether the Court or the Arbitrator Should Decide the Issues

Defendant argues first that an arbitrator, rather than the Court, should decide whether the Defendant (1) forfeited the right to compel arbitration by not seeking arbitration within the applicable time limit ("as soon as possible"); and (2) waived its right to compel arbitration through litigation conduct. Mot. at 5–6. For the reasons given below, the Court finds that the forfeiture question should go to the arbitrator. However, the Court finds that the Court itself must address the waiver question because the delegation provision fails to provide clear and unmistakable proof that the parties agreed to delegate to an arbitrator the issue of waiver through litigation conduct.

In *Howsam v. Dean Witter Reynolds, Inc.*, the United States Supreme Court distinguished between two categories of gateway issues on motions to compel arbitration, each of which has a different presumption as to whether a court or an arbitrator should decide. 537 U.S. 79, 83 (2002); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008) (describing the two categories of disputes). "The first category of gateway issues is a 'question of arbitrability'— that is, 'whether the parties have submitted a particular dispute to arbitration.'" *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (quoting *Howsam*, 537 U.S. at 83). "This category includes issues that the parties would have expected a court to decide such as 'whether the parties are

United States District Court
Northern District of California

bound by a given arbitration clause' or whether 'an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Id.* (citing *Howsam*, 537 U.S. at 84). "These disputes are 'for judicial determination *unless the parties clearly and unmistakably provide otherwise.*'" *Id.* (emphasis added) (citing *Howsam*, 537 U.S. at 83). "In contrast, the second category—'procedural' issues—is 'presumptively not for the judge, but for an arbitrator, to decide.'" *Id.* (citing *Howsam*, 537 U.S. at 84). In *Howsam*, for example, "the Court held that the question as to whether a party met the arbitral forum's statute of limitations for filing a case was a procedural question that the parties would have expected the arbitrator to decide; accordingly, as the Court made clear, the arbitrator should presumptively decide such disputes." *Id.* (citing *Howsam*, 537 U.S. at 85).

### a. The Forfeiture Issue

The Court addresses first the question of whether the Court or an arbitrator should decide Plaintiff's argument that Defendant "forfeited the right to compel arbitration" by not seeking arbitration "as soon as possible." *See* Opp'n at 8. The United States Supreme Court has reiterated that issues of procedural arbitrability, "*i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam*, 537 U.S. at 85 (emphasis in original) (citation omitted). The Court agrees with Defendant that the question of forfeiture by not seeking arbitration "as soon as possible" is a question of time limits, which is part of this second category of gateway issues. Therefore, the forfeiture issue is presumptively reserved for the arbitrator. *See Howsam*, 537 U.S. at 84; *see also Martin*, 829 F.3d at 1123 (discussing that in *Howsam*, the United States Supreme Court "held that the question as to whether a party met the arbitral forum's statute of limitations for filing was a procedural question that the parties would have expected the arbitrator to decide; accordingly, as the [Supreme] Court made clear, the arbitrator should presumptively decide such issues."). Additionally, this presumption is reinforced here by express contractual language in the Arbitration Agreement that provides "[t]he Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration." Keller Decl., Ex. D at 22.

Accordingly, having found the forfeiture question reserved for the arbitrator, the Court need not consider it further.

### b. The Waiver Issue

The Court addresses second the question of whether the Court or an arbitrator should decide the question of waiver through litigation conduct. The Ninth Circuit has "made clear that waiver by litigation conduct is part of the first category of gateway issues," meaning the question of waiver "is presumptively for a court and not an arbitrator to decide." *Martin*, 829 F.3d at 1123 (citing *Cox*, 533 F.3d at 1121 and *Howsam,* 537 U.S. at 83). Therefore, the Court must decide the waiver question *unless* the parties placed "clear and unmistakable language" in the arbitration agreement that the parties intended for an arbitrator to decide that question. *Id.* at 1124 (citing *Hong v. CJ CGV Am. Holdings, Inc.*, 222 Cal. App. 4th 240, 258 (2013)).

Here, the Arbitration Agreement's delegation clause provides:

> Unless otherwise stated in this Agreement, **the Arbitrator**, and not any federal, state, or local court or agency, **will have exclusive authority to resolve disputes relating to the** interpretation, applicability, **enforceability** or formation **of this Agreement** including, but not limited to, any claim that all or any part of this Agreement is void or voidable and **pertaining to any waiver**.

Keller Decl., Ex. D (emphasis added). Defendant provides two arguments as to why this delegation clause provides "clear and unmistakable language" that the parties intended for an arbitrator to decide the question of waiver based on litigation conduct. First, Defendant argues that because the clause reserves exclusive authority to the arbitrator regarding challenges to the "enforceability" of the arbitration agreement, that language clearly and unmistakably delegates the question of whether Defendant waived the right to arbitration through litigation conduct. *See* Reply at 2–3. Second, Defendant argues that the language "pertaining to any waiver" also clearly and unmistakably delegates the question of whether Defendant waived the right to arbitration through litigation conduct. The Court disagrees.

First, the language delegating issues of "enforceability" to the arbitrator does not clearly and unmistakably delegate the waiver question to the arbitrator. The Ninth Circuit has previously

held that similar language did not overcome the presumption that courts decide the issue of waiver. For instance, in *Martin*, the Ninth Circuit rejected the defendant's argument that the clause overcame the presumption that the question of waiver based on litigation conduct should be decided by the court. 829 F.3d at 1124. There, the provision provided that all "determinations as to the scope, *enforceability* and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court." *Id.* (emphasis added). The Ninth Circuit held that this language was "*a fortiori* insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary." *Id.* Therefore, in light of *Martin*, the Court in the instant case rejects the Defendant's argument that "[b]ecause the agreement clearly delegates to the arbitrator the authority to decide challenges to its *enforceability*, the arbitrator—not the Court—must decide [Plaintiff's] waiver argument." Reply at 3 (emphasis added).

Moreover, the case law cited by Defendant does not provide support for Defendant's argument that the waiver question was clearly and unmistakably delegated. Instead, the cases cited by Defendants are inapposite because they do not specifically address the question of whether the *waiver* question was delegated to the arbitrator. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 68 (holding that the question of whether the Agreement is unconscionable was delegated to the arbitrator when the agreement provided that "[t]he Arbitrator shall have exclusive authority to resolve any dispute relating to the enforceability of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 n.4 (9th Cir. 2016) (noting that "[t]he arbitration agreements may not have clearly and unmistakably delegated to the arbitrator the authority to decide the question of waiver by litigation conduct. . . . But that question is not at issue in this litigation" (citing *Martin*, 892 F.3d at 1124–25)); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding only that the agreement "clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability"); *Tompkins v. 23 and Me, Inc.*, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) (concluding that "a bare reference to the AAA rules in [defendant's] online contract does not show that the parties clearly and unmistakably intended to delegate

13

1    arbitrability"), *aff'd* 840 F.3d 1016 (9th Cir. 2016). In sum, the Court finds that the

2    "enforceability" language does not clearly and unmistakably delegate the waiver question to the

3    arbitrator.

4              Second, the Court finds that the "pertaining to any waiver" language also fails to clearly

5    and unmistakably delegate to the arbitrator the question of whether Defendant waived the right to

6    arbitration through litigation conduct. The clear and unmistakable standard is a high bar, and in the

7    face of ambiguity, courts should be reluctant to find delegation to the arbitrator. *See, e.g.*, *Kaplan*,

8    514 U.S. at 945 ("And, given the principle that a party can be forced to arbitrate only those issues

9    it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to

10   interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the

11   arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter

12   they reasonably would have thought a judge, not an arbitrator, would decide."). Here, ambiguity

13   exists in the phrase "pertaining to any waiver." As Plaintiff points out, there is confusion and

14   ambiguity caused by the use of the conjunctive word "and" in the provision: "any claim that all or

15   any part of this Agreement is void or voidable *and* pertaining to any waiver." *See* Opp'n at 4

16   (citing Keller Decl., Ex. D (emphasis added)). Because of the use of the conjunctive word "and,"

17   the literal meaning of this clause is that it applies to disputes that both involve a claim that the

18   Agreement is void or voidable *and* that also pertain to "any waiver." Thus, under the literal

19   meaning of the provision, the situation here—that asks only whether Defendant waived arbitration

20   through litigation conduct—would not be delegated to the arbitrator because this situation does not

21   involve the additional question of whether the Agreement is void or voidable.

22             Further ambiguity exists because a layperson, such as Plaintiff, may not understand the

23   phrase "pertaining to any waiver" to necessarily refer to a situation where an employee files suit in

24   court and the employer delays seeking arbitration. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 109 F.

25   Supp. 3d 1185, 1202 n.16, *aff'd in part, rev'd in part, and remanded on other grounds*, 848 F.3d

26   1201 (9th Cir. 2016) ("[W]hether the language of a delegation clause is 'clear and unmistakable'

27   should be viewed from the perspective of the particular parties to the specific contract at issue.

28

What might be clear to sophisticated counterparties is not necessarily clear to less sophisticated employees or consumers.").

Importantly, the term "waiver" appears in several different contexts in the Arbitration Agreement, none of which have to do with waiver of arbitration through litigation conduct. For instance, the Arbitration Agreement that Plaintiff reviewed on MU spends several slides discussing class and collective action waivers and states that "[y]ou may therefore opt out of and not be subject to the Class Action Waiver." *See* Keller Decl., Ex. D at 21. As to "construction," the Arbitration Agreement provides that "[a] waiver of one or more terms of this Agreement by any party shall not be a waiver of the entire Agreement." *Id.* at 25. Additionally, the Agreement provides: "[t]he Arbitrator may award any party any remedy to which the party is entitled under applicable law, but, unless you opt-out pursuant to the Class and Collective Waiver Opt-Out clause above, remedies are limited to those that would be available to a party in his or her individual capacity." *Id.* at 24. Because nothing in the Arbitration Agreement itself explains that "waiver" may also encompass the situation where an employee files suit in court and the employer delays seeking arbitration, and because the Arbitration Agreement specifically contemplates and explains to the employee other types of possible waiver issues, the Court agrees with Plaintiff that a layperson would not have understood the term "waiver" in the provision to refer to the situation at issue here.

Therefore, having found ambiguity in the phrase "pertaining to any waiver," the Court concludes that such language does not pass the high bar to demonstrate that the parties clearly and unmistakably delegated the waiver through litigation question to an arbitrator. Accordingly, the Court finds that the Court—not an arbitrator—must decide the issue of waiver through litigation conduct.

**2. Whether Defendant Waived the Right to Arbitrate**

Having decided that the Court itself must conduct the waiver analysis, the Court turns to that question next. For the reasons given below, the Court concludes that Defendant did not waive the right to compel arbitration.

15

"The right to arbitration, like other contractual rights, can be waived." *Martin*, 829 F.3d at 1124 (citing *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009)). A determination of whether "the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)). "As such, '[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'" *Martin*, 829 F.3d at 1124 (quoting *Fisher*, 791 F.2d at 694). Here, Defendant does not challenge the fact that Defendant had knowledge of the right to compel arbitration; thus, the Court addresses only the second and third factors below.

### a. Whether Plaintiff Proved Defendant Engaged in Acts Inconsistent with the Right to Arbitration

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin*, 829 F.3d at 1125. However, the Ninth Circuit has explained that "this [second] element [is] satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id.* (citations omitted). Moreover, the Ninth Circuit has said that "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with the right to arbitrate." *Id.* (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). However, "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver. . . . This is especially true when parties state well into the litigation they do not intend to move to compel arbitration." *Id.* "Additionally, although filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an

inconsistent act, seeking a decision on the merits of an issue may satisfy this element." *Id.*

Here, the Court finds that Defendant has not engaged in conduct inconsistent with its right to arbitrate because Defendant has not actively litigated its case to take advantage of being in federal court. First, Defendant has been transparent and consistent in its interest in enforcing the Arbitration Agreement since the outset of this case (filed October 10, 2017), and Defendant reiterated its interest in seeking arbitration in its November 10, 2017 and February 14, 2018 answers (*see* ECF No. 1-3 at 3; ECF No. 19 at 22); in the February 7, 2018 and July 3, 2018 joint case management statements (*see* February 7, 2018 JCMS at 2–3; July 3, 2018 JCMS at 1–2); at the February 14, 2018 case management conference (Knopp Decl. ¶ 6); and in Defendant's June 5, 2018 letter to Plaintiff's counsel (Knopp Decl., Ex. A). *Compare Blau v. AT&T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) (finding that defendants did not act inconsistently after moving to compel a year since the beginning of the litigation because defendants "were clear from the outset that they might move to compel arbitration"), *with Martin*, 829 F.3d at 1126 (finding inconsistent acts when defendants "did not even note their right to arbitration until almost a year into the litigation" and "fourteen months into the litigation, [ ] told the district judge and opposing counsel that they were likely 'better off' in federal court"). Second, Defendant participated only in minimal discovery and did not file any substantive motions, including any motion to dismiss, let alone a motion to dismiss on a key merits issue. *Compare Martin*, 862 F.2d at 1125 ("[S]eeking a decision on the merits of an issue may satisfy this element.").

Finally, Defendant moved to compel arbitration in a timely manner after learning of its right to compel arbitration. Defendant explained that when this action was first commenced, Ninth Circuit law had held that arbitration agreements with class action waivers were unenforceable, and therefore Defendant believed it could not enforce the agreement as written (although Defendant continually preserved its potential right to arbitrate). *See* Mot. at 9 (citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *overruled by Epic Sys. Corp.*, 138 S. Ct. 1612 (decided May 21, 2018)). After the United States Supreme Court overruled Ninth Circuit precedent in *Epic Sys. Corp.* and held that an arbitration agreement containing a class action waiver is enforceable

Case No. 17-CV-06540-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE

on May 21, 2018, Defendant's counsel, believing it could now enforce the agreement as written, contacted Plaintiff's counsel on June 5, 2018, and requested that Plaintiff dismiss all of her non-PAGA claims in favor of arbitration. Knopp Decl. ¶ 7; *id.*, Ex. A (stating that "[i]n light of *Epic Systems Corp. v. Lewis*, in which the Supreme Court overruled Ninth Circuit precedent and held that arbitration agreements containing class action waivers are enforceable, [Plaintiff] is barred from pursuing her class claims and, instead, may pursue her claims (if at all) only on an individual basis in arbitration."); *see also, e.g.*, *Fisher*, 791 F.2d at 697 (finding that party did not "act[] inconsistently with a known existing right" if "earlier motion to compel arbitration would have been futile" under the law). When Plaintiff refused to submit to arbitration, Defendant opted to move to compel and did so by August 20, 2018. *See* Mot.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff attempts to compare Defendant's actions to the action of the defendant in *Martin,* where the Ninth Circuit found inconsistent acts. *See* Opp'n at 6–7 (citing 829 F.3d at 1120–22, 1126). However, the actions of the defendant in *Martin* look very different from Defendant's actions here. In *Martin*, the Ninth Circuit found waiver when the defendants "spent seventeen months litigating the case," filed "a motion to dismiss on a key merits issue," spent "considerable time and effort" on a joint stipulation structuring the litigation, conducted "a deposition," explained to the judge and opposing counsel that they were likely "better off" in federal court, and were warned by the judge "about the possibility of waiver." 829 F.3d at 1122, 1126. Importantly, the fact that the *Martin* defendants sought a "decision on the merits of an issue" may have alone satisfied the "inconsistent act" requirement. *See id.* at 1125. By contrast, Defendant here did not file any motion to dismiss, let alone a motion to dismiss on a key merits issues, did not conduct a deposition, and did not assert to the Court and opposing counsel that it was likely better off in federal court, Instead, Defendant consistently asserted its rights under the Arbitration Agreement.

Second, Plaintiff takes issue with the fact that Defendant removed the case from state to federal court. *See* Opp'n at 7. However, courts have consistently rejected the argument that a party waived the right to compel arbitration by removing a case to federal court. *See, e.g.*, *Cox*, 533 F.3d

Case No. 17-CV-06540-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE

United States District Court
Northern District of California

at 1125–26 (finding no inconsistent act even when defendant removed the case); *Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 31118861, at *3 n.2 (N.D. Cal. Aug. 5, 2010) ("[a] petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration." (quoting *St. Agnes Med. Ctr. V. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1205 (2003)); *Reynoso v. Bayside Mgmt. Co., LLC*, 2013 WL 6173765, at *6 (N.D. Cal. Nov. 25, 2013) ("simply removing the case to federal court" did not support a finding of waiver); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) ("[R]emoval alone did not amount to implicit waiver of [party's] right to arbitrate.").

Additionally, Plaintiff's assertion that Defendant acted inconsistently with the right to arbitrate by removing the case to federal court makes little sense in light of CAFA. After CAFA, class actions that involve an amount in controversy that exceeds $5 million *cannot* remain in state court because such a class action is subject to the original jurisdiction of the district courts of the United States. *See* 28 U.S.C. § 1332(d)(2). Here, Defendant's removal was based on CAFA. *See* ECF No. 1. Plaintiff does not dispute that this federal court has original jurisdiction over this case pursuant to CAFA. Therefore, by nature of being subject to 28 U.S.C. § 1332(d)(2), Plaintiff's action could *only* be heard in federal court. The Court concludes that given this, such removal by Defendant cannot constitute waiver. Similarly, the Court rejects Plaintiff's argument that "any inability to compel individual arbitration was a result of [Defendant's] tactical decision to remove this case to federal court." *See* Opp'n at 5.

Finally, the case cited by Plaintiff, *Hoover v. Am. Income Life Ins. Co.*, 206 Cal. App. 4th 1193 (2012), does not persuade the Court that it must find waiver because of Defendant's removal. Even *Hoover* acknowledged that "[a] defendant's removal of a case filed in state court does not by itself constitute an implicit waiver of the right to compel arbitration." 206 Cal. App. 4th at 1204. Moreover, that state court case explained that "a defendant's removal of a case to federal court, coupled with participation in several months of litigation, waives the right to arbitrate because electing to proceed in federal court on an arbitrable dispute is presumptive waiver of the right to arbitrate," but that "[t]he presence or absence of prejudice from the litigation is a determinative

issue." *Id.* at 1204–05. *Hoover*, however, is distinguishable from the instant case. First, as discussed in the paragraphs below, any delay by Defendant to compel arbitration was due to the fact that Defendant reasonably believed that Ninth Circuit law prevented Defendant from moving to compel until the Supreme Court of the United States overturned that Ninth Circuit law. Additionally, Defendant's participation in the interim was minimal—confined to discovery—and Defendant moved to compel arbitration as soon as it thought legally appropriate. Second, as discussed in Section III.A.2.b., a showing of prejudice is absent from this litigation, which under *Hoover* is "a determinative issue." 206 Cal. App. 4th at 1204–05.

Finally, the nature of the removal itself was different in *Hoover* than in the instant case. In *Hoover*, the defendant attempted—and failed—to remove the case to federal court twice. Both attempts resulted in a remand back to state court. *See id.* at 1200, 1205. By contrast, in the instant case, Defendant's one removal was based on the fact that the federal court has original jurisdiction pursuant to CAFA, which Plaintiff does not dispute. *See* ECF No. 1. Therefore, the state court decision cited by Plaintiff does nothing to change this Court's conclusion.

Third, Plaintiff argues that Defendant delayed seeking arbitration by waiting ten months into the litigation and that Defendant was mistaken in thinking that Ninth Circuit precedent prior to the United States Supreme Court's May 21, 2018 decision prohibited enforcement of the arbitration agreement here. Opp'n at 1, 5–6. However, Courts have found that timeframes similar to ten months did not satisfy the "inconsistent act" requirement. *See, e.g.*, *Guerrero*, 2018 WL 3615840, at *4 (finding no waiver despite ten-month delay in seeking arbitration when defendant made clear several times "—in its motion papers, answer, and in the joint scheduling report filed by the parties . . . —that it believes it has a right to compel arbitration"); *Dominguez v. T-Mobile USA, Inc.*, 2017 WL 8220598, at *9 (C.D. Cal. Jan. 18, 2017) (finding no waiver where party moved to compel arbitration after the lawsuit had been pending for approximately eight months); *Blau*, 2012 WL 566565, at *2 (finding that defendants did not waive when they moved to compel a year since the beginning of the litigation and when defendants "were clear from the outset that they might move to compel arbitration").

Moreover, Defendant consistently reiterated its right to arbitrate during that time period and provided some explanation for the delay. In particular, Defendant's motion and June 5, 2018 letter to Plaintiff's counsel explained that Defendant did not believe it could enforce the arbitration provision until after the United States Supreme Court's May 21, 2018 decision in *Epic Sys. Corp.* overruled the Ninth Circuit's decision in *Morris. See* Mot. at 9–1; Reply at 7–8. The Court finds this belief credible. In 2016, the Ninth Circuit considered in *Morris* the question of whether an employer violates the NLRA by "requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted [(or class/collective action)] legal claim regarding wages, hours, and terms and conditions of employment." 834 F.3d at 979. The Ninth Circuit reasoned that the FAA's savings clause, 9 U.S.C. § 2, removes the obligation of a court to enforce arbitration agreements as written if an arbitration agreement violates some other federal law. *Id.* at 991–92. The Ninth Circuit held that an agreement requiring individualized arbitration proceedings violates the NLRA by barring employees from engaging in the "concerted activit[y]," 29 U.S.C. § 157 (Section 7 of the NLRA), of pursuing claims as a class or collective action, and therefore the Ninth Circuit vacated the order of the district court compelling individual arbitration. *Id.* at 979–84. This Ninth Circuit law governed when Plaintiff originally brought her case. Then, in May of 2018, the Supreme Court of the United States considered three cases, including the Ninth Circuit's decision in *Morris. Epic Sys. Corp.*, 138 S. Ct. at 1619. The United States Supreme Court in *Epic Sys. Corp.* held that in the FAA, Congress "instructed federal courts to enforce arbitration agreements according to the terms—including terms providing for individualized proceedings" and that the NLRA does not offer "a conflicting command." *Id.* The United States Supreme Court therefore held that arbitration agreements requiring individual arbitration, instead of allowing class or collective actions, were enforceable under the FAA. *Id.* at 1632. In so holding, the United States Supreme Court overruled the Ninth Circuit's decision in *Morris. See id.* Therefore, given that Ninth Circuit law previously may have prevented Defendant from enforcing its arbitration agreement, the Court agrees that any delay attributable to the change in law cannot support a finding of waiver. *See, e.g., Fisher*, 791 F.2d at 697 (finding that party did not "act[] inconsistently

21

United States District Court
Northern District of California

with a known existing right" if "earlier motion to compel arbitration would have been futile" under the law).

Plaintiff asserts that even before the United States Supreme Court's decision in *Epic Sys. Corp.* overruled the Ninth Circuit's decision in *Morris*, Defendant still could have compelled arbitration because the arbitration provision at issue here contains a class action waiver of which the employee can opt out. *See* Opp'n at 5–6. In so suggesting, Plaintiff points to a footnote in the Ninth Circuit's decision in *Morris* that stated, "there was no § 8 violation [(of the NLRA)] in *Johnmohammadi v. Bloomingdale's, Inc.* because the employee there could have opted out of the individual dispute resolution agreement and chose not to." *Morris*, 834 F.3d at 982, n.4 (citing 755 F.3d 1072, 1076 (9th Cir. 2014)). Plaintiff argues that based on this one sentence footnote, the Ninth Circuit in *Morris* reaffirmed its holding in *Johnmohammadi*, which held that a class action waiver of which the employee can opt out does not violate the NLRA. *See* Opp'n at 5–6. Plaintiff provides no analysis explaining whether *Morris*'s citation to *Johnmohammadi* means Defendant would or would not have been successful in compelling arbitration. *See* Opp'n at 8.

The Court need not reach that issue because the Court is satisfied from the holding of *Morris* and the procedural record of this case that Defendant's counsel in good faith believed that the Ninth Circuit's decision in *Morris* prevented Defendant from successfully compelling arbitration. The Ninth Circuit's decision in *Morris* plainly held that "an employer violates the [NLRA] by requiring employees to sign an agreement precluding them from bringing, in any forum a concerted [(collective)] legal claim regarding wages, hours, and terms and conditions of employment." 834 F.3d at 989. Additionally, the procedural record demonstrates that Defendant in good faith believed this precedent barred enforcement of the Arbitration Agreement between Plaintiff and her employer Michaels regarding disputes related to her employment. Therefore, the Court finds that Defendant's delay is attributable to its good faith belief and does not reflect a "conscious decision," *see Martin*, 829 F.3d at 1125, to take advantage of the Court's processes. Accordingly, the Court finds that Defendant did not act inconsistently with the right to compel arbitration.

Case No. 17-CV-06540-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE

### b. Whether Plaintiff Demonstrated Prejudice

"To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Martin*, 829 F.3d at 1126 (citing *Fisher*, 791 F.2d at 698). "Such wounds include costs incurred in preparing the complaint, serving notice, or engaging in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction or venue." *Id.* In contrast, in order to establish prejudice, Plaintiff must show that, as a result of Defendant having delayed seeking arbitration, she "incurred costs that [she] would not otherwise have incurred," that she "would be forced to relitigate an issue on the merits on which [she] ha[s] already prevailed in court" or that Defendant "received an advantage from litigating in federal court that [it] would not have received in arbitration." *Id.* at 1126–27 (citing *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 (9th Cir. 2013) (noting that a plaintiff can show prejudice if the opposing party has "gain[ed] information about the other side's cases that could not have been gained in arbitration." (quotation marks omitted)).

Plaintiff does not argue that she incurred any costs or that she would be forced to relitigate an issue on which she has already prevailed. Instead, Plaintiff argues only that she is prejudiced because Defendant used federal court litigation to gain information that would not have been available in arbitration. Opp'n at 7. In particular, Plaintiff points to Defendant's interrogatories 1 through 3, which asked (1) whether Plaintiff has ever filed for bankruptcy; (2) Plaintiff to identify her employers prior to Michaels; and (3) Plaintiff to explain the basis for her vacation pay claim. *Id.* at 7–8. (citing Segal Decl., Ex. 11). In addition, Plaintiff explains that Defendant "propounded requests for production, and Plaintiff responded and produced documents," including "28 pages of Plaintiff's handwritten notes regarding her employment with and claims against [Defendant]." *Id.* (citing Segal Decl., Exs. 12 and 13).

The Court finds Plaintiff does not meet the prejudice requirement. Importantly, Plaintiff has not explained or provided case law showing that Defendant's limited discovery requests resulted in Defendant gaining an unfair advantage that could not have been gained in arbitration.

23

*See, e.g.*, *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990) (finding "appellees' assertions of prejudice [ ] unpersuasively conclusory," when "[t]hey argue[d] that they have spent time and resources in discovery activity and motions practice over a period of two years"). Further, Defendant did not obtain discovery that would not have been available in arbitration. All of the discovery that Defendant served—one set of requests for production, one set of interrogatories, and a deposition notice—is available in arbitration, where the arbitrator has the "authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise."[2] *See* Keller Decl., Ex. D at 23 (incorporating the American Arbitration Association rules into the Arbitration Agreement); *see also, e.g.*, *Richards*, 744 F.3d at 1075 (finding no prejudice when plaintiff did not contend that defendant "used discovery to gain information about the other side's case that could not have been gained in arbitration." (internal quotations omitted)); *Guerrero*, 2018 WL 3615840, at *4 (explaining that the question is whether the "parties have already conducted significant discovery that would be *unavailable in arbitration*" (emphasis added)).

Additionally, Courts have consistently held that minimal discovery—like the three interrogatories and 28 pages of produced documents here—does not constitute prejudice. *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) ("Unsurprisingly, courts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (e.g., by filing a motion to dismiss [(not on a key merits issues)] or requesting limited discovery) before moving to compel arbitration."); *Fisher*, 791 F.2d at 697 ("The record does not support the [plaintiffs'] contention that they have been prejudiced by the extensive discovery undertaken by the parties in this case."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689 (N.D. Cal. July 6, 2011) (finding no prejudice even though some discovery "might not have taken place or would have been less extensive had an arbitral proceeding been

---

[2] *American Arbitration Association*, "Employment: Arbitration Rules and Mediation Procedures," at 14 (Nov. 1, 2009), available at
https://www.adr.org/sites/default/files/EmploymentRules_Web_0.pdf.

Case No. 17-CV-06540-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE

1    initiated sooner.").

2         Similarly, discovery is not prejudicial when it is also conducted for the trial of a non-

3    arbitrable claim, like Plaintiff's PAGA claim here. *See, e.g., Van New Townhouses*, 862 F.2d at

4    759 ("[W]e [have] held that even extensive discovery into both arbitrable and non-arbitrable

5    claims before moving to compel arbitration is insufficient prejudice for a waiver if that discovery

6    is available for the trial of the non-arbitrable claim in federal district court." (citing *Fisher*, 791

7    F.2d at 697)). Therefore, the Court finds that Plaintiff has not met her "heavy burden of proof,"

8    *Fisher*, 791 F.2d at 694, to show prejudice.

9         Accordingly, having found that Plaintiff did not meet her burden of showing inconsistent

10   acts or prejudice, the Court concludes that Defendant did not waive the right to compel arbitration.

11   Therefore, the Court GRANTS Defendant's motion to compel arbitration of Plaintiff's non-PAGA

12   claims.

13   **B. Motion to Dismiss Class Allegations and Motion to Stay**

14        Having concluded that arbitration should be compelled, the Court must now consider

15   whether to dismiss the claims subject to arbitration and whether to stay the lawsuit. Defendant

16   summarily argues that the Court should dismiss all non-PAGA claims and stay the non-arbitrable

17   PAGA claim pending resolution of the arbitration. Mot. at 11. Plaintiff is silent as to whether any

18   dismissal or a stay would be appropriate. *See* Opp'n.

19        First, the Court declines to dismiss the non-PAGA claims because the arbitrator has yet to

20   decide whether the Arbitration Agreement is applicable to Plaintiff's non-PAGA claims. The

21   parties did not provide much briefing on the question of dismissing the non-PAGA claims.

22   However, Defendant acknowledged in its opening brief that "[p]er the Agreement, the parties . . .

23   gave the arbitrator authority to decide whether the agreement is enforceable and encompasses

24   [Plaintiff's] claims. . . . Therefore, to the extent that [Plaintiff] challenges the applicability or

25   enforceability of the Agreement, the Court must compel arbitration to resolve that challenge."

26   Mot. at 6. Plaintiff's brief was silent as to whether the parties agreed to arbitrate Plaintiff's claims

27   on an individual and not on a class basis and whether the scope of the Arbitration Agreement

28

encompasses Plaintiff's non-PAGA claims. *See* Opp'n. The Court finds it would be inappropriate to dismiss the non-PAGA claims before the arbitrator determines whether the Arbitration Agreement encompasses Plaintiff's non-PAGA claims. Thus, the Court DENIES Defendant's motion to dismiss the non-PAGA claims. Instead, the Court stays litigation of the non-PAGA claims pending arbitration. *See Concepcion*, 563 U.S. at 344 (stating that under Section 3 of the FAA, courts must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'").

The Court turns second to the question of whether to stay the non-arbitrable PAGA claim pending resolution of the arbitration. When a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright." *Johnmohammadi*, 755 F.3d at 1074. Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have "discretion whether to proceed with nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (same). "Where it is proposed that a pending proceeding be stayed, the competing interests which are affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (applying *CMAX* standard). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268.

The Court, in its discretion, finds that a stay of the non-arbitrable PAGA claim is appropriate. First, because Plaintiff is silent as to whether a stay is appropriate, Plaintiff has failed to identify any possible damage she may suffer from a stay. Second, Defendant has similarly failed to identify any hardship or inequity it may suffer in being required to go forward with the

26

1  case. Therefore, the first two *CMAX* factors neither weigh in favor nor against staying the non-

2  arbitrable PAGA claim. Third, the Court finds that a stay would save the Court and the parties

3  time and effort. *See Leyva*, 593 F.2d at 863–64 ("A trial court may, with propriety, find it is

4  efficient for its own docket and the fairest course for the parties to enter a stay of an action before

5  it, pending resolution of independent proceedings which bear upon the case. . . . In such cases, the

6  court may order a stay of the action pursuant to its power to control its docket and calendar and to

7  provide for a just determination of the cases pending before it."). "Plaintiff's PAGA claim[] [is]

8  derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of

9  the nonarbitrable PAGA claim[] will depend upon the arbitrator's decision." *Shepardson v.*

10 *Adecco USA, Inc.*, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016); *see also Jacobson v. Snap-*

11 *on Tools Co.*, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (granting the defendant's motion

12 to compel arbitration on all of the plaintiff's individual claims and staying the representative

13 PAGA claim pending completion of arbitration); *Jenkins v. Sterling Jewelers, Inc.*, 2018 WL

14 922386, at *7 (S.D. Cal. Feb. 16, 2018) (staying Plaintiff's PAGA claims pending the outcome of

15 the arbitration proceedings of the non-PAGA claims). Thus, the Court concludes that a stay will

16 help advance "the orderly course of justice." *CMAX*, 300 F.2d at 268; *see also Wilcox*, 586 F.

17 Supp. at 567 (granting stay where arbitrator's decision was likely "to decide issues that will, at

18 least, streamline subsequent proceedings" before the court); *Mediterranean Enters., Inc. v.*

19 *Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (affirming district court's decision to stay

20 lawsuit pending an arbitration that "might well decide issues which bear in some way on the

21 court's ultimate disposition" of nonarbitrable claims). In sum, the Court finds the *CMAX* factors

22 weigh in favor of granting a stay of Plaintiff's non-arbitrable PAGA claim, and therefore, the

23 Court GRANTS Defendant's motion to stay Plaintiff's PAGA claim.

24 ## IV.  CONCLUSION

25        For the foregoing reasons, the Court GRANTS Defendant's motion to compel arbitration

26 and stays the case. The Court DENIES Defendant's motion to dismiss the class allegations. The

27 parties shall notify the Court within seven days of receiving an arbitration ruling.

28

1    The Clerk shall administratively close the case file. This is an internal administrative

2    procedure that does not affect the rights of the parties.

3    **IT IS SO ORDERED.**

4

5    Dated: December 11, 2018

6    _Lucy H. Koh_

7    LUCY H. KOH
     United States District Judge

Case No. 17-CV-06540-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE